UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA ANN CLARK,<br>Plaintiff,<br>v.<br><br>NATERA, INC.,<br>Defendant. | Case No. 26-cv-00892-VC (AGT)<br><br>**ORDER ON MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 30 |

Due to alleged discovery misconduct, Melinda Ann Clark is seeking case-dispositive sanctions or jury instructions that would instruct the jury either that Natera's stated reason for terminating Clark was pretextual or that Natera made untruthful disclosures during discovery and one of its employees gave false deposition testimony. Clark hasn't convinced the Court that any sanction is warranted. The motion will be denied.[1]

[1] Because the undersigned is denying the motion, there's no need for a report and recommendation. *See, e.g.*, *BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, 730 F. Supp. 3d 308, 325 (N.D. Tex. 2024) ("[T]he undersigned has authority to enter a nondispositive order . . . denying a request for what might be considered a dispositive sanction."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 352–53 (S.D.N.Y. 2023) ("[A]lthough Keurig seeks claim-dispositive sanctions[,] . . . the sanctions the Court determines are appropriate do not fully dispose of a claim or defense. Accordingly, under the referral for general pretrial supervision, it is appropriate for me to resolve the Motion in the first instance . . . .") (citation modified); *cf. Bastidas v. Chappell*, 791 F.3d 1155, 1164 (9th Cir. 2015) ("Just as it is of course quite common for the finality of a decision to depend on which way the decision goes, so the dispositive nature of a magistrate judge's decision on a motion to amend can turn on the outcome.") (citation modified).

# I. BACKGROUND

## A. Factual Background

During a 2025 dinner gala for Natera's sales employees, Melinda Clark was walking to the stage to receive an award when, according to Natera, she forcefully grabbed another employee and left nail marks on her shoulder. Dkt. 37, Lau Decl. ¶¶ 4–5; Dkt. 31-2 at 4, Def.'s Resp. to Interrog. No. 2. Later that night, the other employee called the police to report the incident. Lau Decl. ¶ 6. Police responded to the gala-hosting hotel, and HR official Karie Lau responded too. *Id.* ¶¶ 4–6. Lau investigated the incident late into the night. *Id.* ¶ 6. The next day, she recommended that Natera terminate Clark, which Natera did. Lau Decl. ¶ 3; Dkt. 31-2 at 4. Clark insists that she didn't inappropriately grab another employee and that Natera used the incident as pretext to terminate her for whistleblowing. Dkt. 1, Compl. ¶ 105.

At the center of Clark's motion for sanctions is a cell-phone video that Clark's boss's boss, Amy Macalintal, recorded during the awards ceremony. Macalintal recorded Clark walking to the stage to receive her award and texted the video to Clark later that night as a keepsake. Dkt. 31-7, Macalintal Dep. Tr. 11:3–12, 16:12–24. Clark says that the video "demonstrates the falsity" of the claim that she inappropriately grabbed another employee. Compl. ¶ 97. Natera disputes Clark's interpretation of the video, asserting that the video isn't the smoking gun Clark claims it to be. *See* Lau Decl. ¶ 11 ("[T]he video . . . was taken from across a very large room and it is difficult to see anything relating to the events in question."). Clark's sanctions motion focuses on what Natera knew about the video when it terminated Clark and on how Natera's narrative about the video, and in particular HR official Karie Lau's narrative, has changed during discovery.

During her deposition, Lau testified that, as part of her investigation, she asked certain managers whether they had videos or photos of what happened during the awards ceremony. She said she received no response. Dkt. 31-1, Lau Dep. Tr. 256:22–257:6. She also testified that the first time she watched the Macalintal video was while preparing for her deposition. *Id.* at 26:21–27:2. In an interrogatory response, Natera adopted Lau's recollection on asking certain managers whether they had videos or photos of the incident and on receiving no response. *See* Dkt. 31-4, Def's First Suppl. Resp. to Interrog. No. 14.

Further discovery revealed that Lau's representation that she received no response after asking certain managers whether they had videos or photos of what happened was not true. At her deposition, Amy Macalintal testified that she was among the employees Lau asked about possible videos or photos. Macalintal Dep. Tr. 11:13–15. Macalintal testified that she told Lau she had a video of Clark walking to the stage, that Lau then asked her to share a copy, and that Macalintal then texted the video to Lau. *Id.* at 14:5–15:1, 88:20–89:11. Macalintal still has a copy of the video on her personal cell phone, and a copy of the text message through which she shared the video with Lau. The text message is dated the same night as the incident. *Id.* at 28:21–23, 88:20–89:11.

Although Macalintal sent the video to Lau, she says she didn't discuss it with Lau after sharing it. *Id.* at 16:8–11. She does recall meeting with Lau and another Natera manager, David Basher, to discuss the incident on the night it happened. *Id.* at 35:11–36:24. Basher recalls watching the video "close to the time of the incident" but doesn't remember exactly when or where. Dkt. 31-9, Basher Dep. Tr. 29:18–21, 30:8–14, 31:1–15. He also doesn't recall discussing the video with anyone. Dkt. 38-1, Suppl. Basher Dep. Tr. 33:13–15. He never received a copy of the video; someone showed it to him. *Id.* at 30:15–18, 31:25–

32:4. Although he couldn't recall who that was, he said it would have been either "Karie Lau, from HR, or Amy [Macalintal], if Amy took the video." *Id.* at 32:7–9.

In opposition to Clark's sanctions motion, Natera has offered a declaration from Lau. Therein, Lau explains that after Macalintal's deposition she reviewed her personal cell phone and discovered that, contrary to her deposition testimony, she did receive the video in a text message from Macalintal on the night of the incident. Lau Decl. ¶ 9. Even after confirming that she received the video, Lau says she still doesn't remember receiving it and has reaffirmed that she didn't consider it during her investigation. *Id.* ¶¶ 10–11. She also says that the period after the incident with Clark was "hectic," as Lau "was trying to figure out what had happened, . . . hundreds of people were pouring out of the large banquet room," and the police arrived. *Id.* ¶ 6. She implies that Macalintal's video got lost in the shuffle.

In her motion for sanctions, Clark contends that Macalintal's and Basher's testimony, and the text message and video that Macalintal sent to Lau, reveal several things: first, that Lau "deliberately testified falsely" about not receiving a copy of the video on the night of the incident; second, that Natera's interrogatory responses were false because they embraced Lau's recollection; and third, that Natera, by way of Lau and Macalintal, had a copy of the video and should have produced it (and the text message in which Macalintal shared it with Lau) as part of Natera's initial disclosures under General Order 71, and in response to Clark's requests for production. Dkt. 30 at 15. "Natera's false discovery responses and false swearing by its key HR witness constitute sanctionable misconduct," Clark argues. *Id.* As for Lau's

declaration, Clark views it as a strategic effort to avoid sanctions, *see* Reply, Dkt. 39 at 2–3, but doesn't suggest that the Court cannot consider it.[2]

With her declaration, Lau also submitted deposition errata "to correct certain answers that [she] gave during [her] deposition, primarily to clarify that [she] did receive the video." Lau Decl. ¶ 12. Clark has moved to strike the errata because, she says, the errata "do[] not merely correct transcription errors or clarify ambiguous testimony; but instead substantively rewrite[] Lau's sworn answers . . . ." Dkt. 41 at 3. The Court will address Lau's motion to strike the errata in a separate order after that motion is fully briefed. Dkt. 41.

**B. Clark's Proposed Sanctions**

Clark proposes three options for a sanction to enter.

First, Clark asks the Court to strike Natera's answer and enter default. *See id.* at 20. She acknowledges that this first option would effectively be a terminating sanction, *see id.* at 19–20; it would leave Natera defenseless and set the stage for default judgment.

Second, in the alternative, Clark proposes that the Court instruct the jury that, as a matter of law, Natera's stated reason for terminating Clark, i.e., that Clark forcefully grabbed another employee, "was not the real reason for [Clark's] termination." *Id.* at 20–21. Although not a terminating sanction, this second proposal would also be very severe; it would prevent Natera from proving that it had a non-pretextual reason for terminating Clark.

---

[2] On summary judgment, a party usually "cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting another source). Neither side has suggested that the same rule applies on a motion for sanctions. Also, even in the summary judgment context, it isn't clear that Lau's declaration would be inadmissible. *See id.* at 1080–81 (explaining that "the sham affidavit rule should be applied with caution" and that "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham") (citation modified).

Third, in the alternative, Clark proposes that the Court add several paragraphs to the end of Model Jury Instruction 1.14 ("Credibility of Witnesses"). Instruction 1.14 explains that the jury may choose not to believe anything a witness said, or only part of what a witness said, if the jury decides that the witness deliberately testified untruthfully. After that general instruction, Clark suggests adding the following:

> At this time, the Court instructs you that prior to trial, during the "discovery" phase of this case, the Court determined that Defendant Natera, Inc. violated important obligations it has under the Federal Rules of Civil Procedure to make truthful and accurate disclosures to the Plaintiff's side.
>
> Specifically, Natera failed to disclose the fact that shortly after the incident which Defendant contends was the reason for Ms. Clark's termination, Defendant became aware of and possessed the cell phone video made by Amy Macalintal which showed Ms. Clark's walk to the stage on the evening in question.
>
> The Court further found that Karie Lau, who was involved in an investigation of the incident and recommended Ms. Clark's termination, gave false testimony in her deposition on August 13, 2026 about the fact that she knew about the Macalintal video, had spoken to others about it, had requested that Ms. Macalintal send it to her, and that Ms. Macalintal had sent it to her via text message on the evening of January 30, 2026.

Dkt. 30 at 22 (emphasis omitted) (paragraph breaks added).

In addition to any of the sanctions Clark has proposed, she asks the Court to award her attorney's fees for bringing her motion for sanctions. *Id.*

## II. LEGAL STANDARD

As the legal basis for her requests for sanctions, Clark relies on Federal Rule of Civil Procedure 37(b)(2)(A) and on the Court's inherent authority to impose sanctions in response to "abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980).

Under Rule 37(b)(2)(A), the Court may sanction a party for "fail[ing] to obey an order to provide or permit discovery." The same rule includes a list of possible sanctions, including "directing that the matters embraced in the order or other designated facts be taken as established," "prohibiting the disobedient party from supporting or opposing designated claims or defenses," "striking pleadings in whole or in part," "dismissing the action," or "rendering a default judgment." Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii), (v)–(vi).

"Instead of or in addition to" any of the above sanctions, Rule 37(b)(2)(C) provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

"When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). A finding of bad faith "requires proof of bad intent or improper purpose." *Id.*

A case-dispositive sanction is "very severe." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Whether imposed under Rule 37 or the Court's inherent authority, a case-dispositive sanction requires a finding of "willfulness, fault, or bad faith." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting another source). Courts may also use the following nonexclusive factors to determine whether case-dispositive sanctions are appropriate:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions[,] [including] . . . . whether the court has considered lesser sanctions,

> whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions.

*Connecticut Gen. Life Ins.*, 482 F.3d at 1096 (citation modified).

On motions for sanctions, courts are divided on whether they should apply the preponderance standard or the more exacting clear-and-convincing standard when evaluating allegations of bad faith. *See In re Vaxart, Inc. Sec. Litig.*, No. 20-CV-05949-VC, 2025 WL 1865848, at *6 (N.D. Cal. July 7, 2025) (identifying the split). Because the Court is denying Clark's motion (for the reasons discussed below), the Court will apply the preponderance standard, which is more favorable to Clark.

## III. DISCUSSION

Having considered the facts and legal standards set forth above, the Court concludes that none of the sanctions Clark has proposed is warranted. Clark hasn't established that Natera violated a discovery order, as necessary for sanctions under Rule 37(b)(2)(A), or that Natera acted in bad faith, as necessary for sanctions under the Court's inherent authority.

### A. Sanctions Under Rule 37(b)(2)(A)

Before the Court can sanction a party under Rule 37(b)(2)(A), the party must violate a discovery order. Clark bases her Rule 37(b)(2)(A) request for sanctions on her contention that Natera violated General Order 71.

General Order 71 governs initial disclosures in employment discrimination cases. Among other things, it requires employers to produce "Documents concerning investigation(s) of any complaint(s) about the plaintiff . . . if relevant to the plaintiff's factual allegations or claims . . . ." Part 2(2)(l). "Documents" is defined to include "electronically stored information" as used in Federal Rule of Civil Procedure 34(a), which covers "video footage." *Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024). Clark maintains

that "Natera's failure to identify that it possessed the Macalintal Video and produce the same in its Initial Disclosures violated General Order 71." Dkt. 30 at 16.

The problem with Clark's argument is that well before Clark moved for sanctions, Natera took the position that its employees' personal cell phones weren't within its possession, custody, or control. *See* Dkt. 31-5 at 21, Resp. to Req. for Produc. No. 32. As a result, Natera didn't search Macalintal's or Lau's personal cell phones for videos of the gala. Natera did notify Clark that certain employees, including Macalintal and Lau, may have responsive photos or videos, but Natera left it up to Clark to subpoena those employees for responsive documents. *See id.* ("To the extent responsive documents exist, Defendant believes they may be in the possession, custody, or control of Kayla Chaney-Zarkadas, Karie Lau, Derrick Ledford, Amy Macalintal, David Basher, or Lee Welchel.").

Through the discovery-dispute process, Clark can challenge Natera's position that Macalintal's and Lau's personal cell phones are not within Natera's possession, custody, or control. *See* AGT Civil Standing Order § VII.B. But to date, Clark hasn't done so. As a result, Clark hasn't established that Natera's General Order 71 disclosures were deficient.

If the Court had ordered Natera to search Macalintal's and Lau's personal cell phones and to produce any videos of the gala thereon, and Natera had failed to produce Macalintal's video, *then* Natera would have violated a discovery order and the Court could have imposed Rule 37(b)(2)(A) sanctions. But that's not what happened. Natera took the position that its employees' personal cell phones weren't within its possession, custody, or control. Whether that position would hold if challenged is an open question, but that open question doesn't mean that Natera violated General Order 71.

Because Clark hasn't identified a discovery order that Natera violated, sanctions are not warranted under Rule 37(b)(2)(A).

**B. Sanctions Under the Court's Inherent Authority**

Because Natera hasn't violated a discovery order, let alone done so willfully, the Court may impose sanctions under its inherent authority only if it finds that Natera acted in bad faith. *See Rousseau*, 985 F.3d at 1090. As noted above, a finding of bad faith "requires proof of bad intent or improper purpose." *Id.*

Clark asserts that Natera acted in bad faith because Lau, the HR official who recommended terminating Clark, "deliberately testified falsely" concerning her knowledge of, and possession of, the subject video. Dkt. 30 at 15. Clark also maintains that Lau's false testimony infected one or more of Natera's interrogatory responses, which Lau verified, rendering those responses deliberately false, too. *See, e.g.*, Def's First Suppl. Resp. to Interrog. No. 14 (in answer to a request that Natera describe the efforts taken to locate video evidence of the events, responding that "Karie Lau asked certain supervisory employees if they had any videos or photographs depicting [Clark] while she walked to the stage at the gala event . . . *but received no responses*") (emphasis added).

Lau did give false testimony. She testified that she received no response when she asked certain managers whether they had videos or photos of the incident, when in fact she did receive a response from Macalintal, who texted Lau the video she had recorded of Clark walking to the stage during the awards ceremony. On the current record, however, it would be too speculative to conclude that Lau *deliberately* testified falsely.

Lau offered a reasoned explanation for her inaccurate testimony: Macalintal texted her the video during a hectic late-night event and Lau didn't see it. Lau Decl. ¶¶ 6, 8. Thus,

says Natera, when Lau testified that no Natera employee sent her a video of the incident, the inaccuracy was due to a mistake, not because of an intent to deceive.

Just because Lau has offered a reasoned explanation doesn't mean it's true. It is somewhat hard to believe that even after Lau asked Macalintal to send her the video, Lau didn't bother to check her phone, either later that night or the next day when she recommended that Natera terminate Clark. Def.'s Resp. to Interrog. No. 2. On the other hand, it's unclear why Lau would have been motivated to lie. With her motion for sanctions, Clark submitted a copy of Macalintal's video, and the Court has watched it. *See* Dkt. 31-8 (cover page for digital submission). The video doesn't show Clark forcefully grabbing another employee; but as Lau notes, that omission may be because Clark was on the other side of the conference room from Macalintal, and it is difficult to see everything that happened during Clark's walk to the stage. *See* Lau Decl. ¶ 11. Given the video's shortcomings, it's unclear why Lau would have been motivated to hide the fact that Macalintal shared a copy of it with her. Conceivably, Lau could have watched the video and still concluded that Clark had forcefully grabbed another employee based on the statements made by percipient witnesses and based on Lau's observation of "red marks on [the complaining employee's] shoulder." Def's Resp. to Interrog. No. 2.

Given Lau's reasoned explanation for overlooking the video, plus the lack of a clear motive for Lau to lie, the Court concludes that Clark hasn't demonstrated by a preponderance of the evidence that Lau deliberately testified falsely about not receiving the video from Macalintal. Based on this conclusion alone, sanctions are not warranted under the Court's inherent authority. *See Rousseau*, 985 F.3d at 1090. The Court, however, will also address a couple of additional arguments that Clark makes.

Clark cites five cases for the proposition that "providing false testimony during a deposition has been found to be the sort of extraordinary circumstance warranting terminating sanctions." Dkt. 30 at 19. The cases she cites are materially different from this one; they involved blatant fraud on the Court that would have advanced the offending parties' claims or defenses if undetected. *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (counsel materially altered plaintiff's deposition transcript and plaintiff never reviewed the changes despite swearing to the contrary); *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 73 (5th Cir. 2011) (plaintiff testified that he quit his job "solely because of racial harassment," but four months earlier, in a personal injury case, he had testified that he left his job "solely because of back pain"); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 693, 695 (8th Cir. 2001) (plaintiff denied that she had been involved in prior litigation, when in fact she had sued her prior employer); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048–49 (8th Cir. 1991) (plaintiff lied when he denied having a homemade hook on his safety belt, the presence of which undermined his products liability claim); *Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 903–07, 909 (C.D. Cal. 2013) (plaintiffs lied about their extensive meth use, which was essential to the defense). Here, in contrast, it is much less clear whether Lau deliberately lied, or why she would have been motivated to lie.

Concerning prejudice, Clark contends that Natera's inaccurate interrogatory responses, which tracked Lau's testimony, affected how Clark decided to conduct discovery. *See* Reply, Dkt. 39 at 7 (contending that "[t]he parties' mandatory disclosures and initial discovery responses . . . affect just about everything that happens thereafter," including "[t]he specific depositions requested," "the topics to be covered in depositions," and the content of discovery requests). Clark's point is understandable, and yet parties often have to recalibrate

their discovery requests and strategy as discovery moves along. There's still time for more discovery; fact discovery doesn't close until December 18, 2026. Dkt. 35. Also, to the extent that Clark would like to reopen Lau's deposition to ask Lau questions about her declaration, the Court would be amendable to such a request.

This isn't a case in which critical evidence has been destroyed. Both sides have copies of Macalintal's video and will be free to present the video to the jury. Clark hasn't identified a material prejudice resulting from Natera's and Lau's conduct. Nor, as noted above, has Clark proven by a preponderance of the evidence that Lau's untrue testimony, and Natera's related interrogatory responses, were given in bad faith. The Court accordingly concludes that sanctions are not appropriate under its inherent authority.[3]

## IV. CONCLUSION

Clark hasn't proven that Natera violated a discovery order or that Natera or its HR official Karie Lau acted in bad faith during discovery. The Court therefore denies Clark's motion for sanctions. Each side shall bear its own costs related to the motion.

**IT IS SO ORDERED.**

Dated: October 27, 2026



Alex G. Tse
United States Magistrate Judge

[3] This holding is without prejudice to Clark seeking to impeach Lau at trial based on Lau's inconsistent testimony.